IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

CHRISTIE M. BOUFFORD,

        Plaintiff,

v.                                 Civil Action no. 2:05-cv-00507

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.


## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's Motion for Judgment on the Pleadings, Defendant's Brief in Support of Judgment on the Pleadings, and Plaintiff's Response to Defendant's Brief in Support of Judgment on the Pleadings.

Plaintiff, Christie M. Boufford (hereinafter referred to as "Claimant"), protectively filed applications for SSI and DIB in September, 2003, alleging disability as of September 1, 2003, due to back problems, sensory nerve damage through the right leg, and carpal tunnel syndrome. (Tr. at 55-58, 78.) The claims were denied initially and upon reconsideration. (Tr. at 35-37, 42-44.) On June 3, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 45.) The hearing was held on October 25, 2004 before the Honorable Arthur J. Conover. (Tr. at 413-41.) By decision dated December 22, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-22.) The ALJ's decision became the final decision of the Commissioner on May 6, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.) On June 23, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

2

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f),

416.920(f) (2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16; Finding No. 2, tr. at 21.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of lumbar disc disease, an adult attention deficit hyperactivity disorder, an affective disorder, and an anxiety disorder. (Tr. at 16; Finding No. 3, tr. at 21.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16; Finding No. 3, tr. at 21.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 19; Finding Nos. 5 & 7, tr. at 22.)  As a result, Claimant cannot return to her past relevant work. (Tr. at 20; Finding No. 6, tr. at 22.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as a light cleaner, a hand packer, and a sorter/inspector, which exist in significant numbers in the national economy. (Tr. at 21; Finding No. 12, tr. at 22.)  On this

4

basis, benefits were denied.  (Tr. at 21; Finding No. 13, tr. at 22.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 29 years old at the time of the administrative

5

hearing.  (Tr. at 417-8.) She has a high school education.  (Tr. at 84.)  In the past, she worked various jobs as meat packer/clerk and cashier.  (Tr. at 79, 16.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Claimant submitted and the ALJ considered medical evidence concerning her physical ailments. (Tr. at 16.)  However, because none of those affect the issues on appeal, they will not be summarized here.

Claimant was raised by alcoholic parents, and was physically abused by her stepmother.  She was sexually abused by her brother and step-brother.  (Tr. at 123, 208-9, 213, 336.)  She was in and out of foster homes, group homes and a detention center during a period of her childhood.  (Tr. at 208-9.) In March, 1989, when Claimant was age 13, a counselor at Stony Brook Pediatrics noted that she and her family were in counseling. (Tr. at 124.)  Her family reported that she was disoriented in the morning and had "vacant" periods during the day.  (Tr. at 124.)  In June, 1989, Claimant reported hearing voices that weren't there.  Claimant's foster mother stated that Claimant was explosive when angry.  (Tr. at 123.)  Examiners recommended counseling and evaluation for questionable schizophrenia, among other questionable diagnoses.

6

(Tr. at 123.)

It does not appear that Claimant had any follow-up mental health treatment or counseling until eleven years later, on December 13, 2002, at which time she underwent a Comprehensive Psychiatric Evaluation with William R. Hall, PA(B). (Tr. at 207-10.) Claimant's chief complaint was that she was "getting way too upset with [her] kids." (Tr. at 207.) She stated that she was seen for an individual therapy session about two years earlier due to anxiety and stress, but had no follow-up treatment. (Tr. at 208.) Upon mental status examination, Mr. Hall deemed Claimant of average intelligence, with good judgment and insight and unimpaired memory. (Tr. at 209.) He diagnosed generalized anxiety disorder and prescribed medications. (Tr. at 209.) Thereafter, Mr. Hall treated Claimant on two occasions, in January and May 2003.

In January, Mr. Hall noted that Claimant was calmer and more tolerant with her children, but still overwhelmed at times in coping with their behavior. Claimant complained of impaired concentration and memory, but denied depression. At that time, Claimant was working five (5) days a week delivering pizza. (Tr. at 205.) Mr. Hall adjusted her medications, advised her to entirely abstain from alcohol, and urged her to begin individual therapy with treatment focus on parenting issues. (Tr. at 206.)

In May, 2003, after a four-month absence, Claimant returned to Mr. Hall and stated that she discontinued her medications due to

lack of benefit from them.  (Tr. at 203.)  She described recent worsening of her symptoms including generalized anxiety-tension, psychomotor restlessness, impaired concentration and forgetfulness, and ruminative worry.  Id.  The notes indicate that Claimant had resumed her pizza delivery job three weeks prior to this visit. Id.  Mr. Hall again adjusted Claimant's medications and recommended individual therapy. (Tr. at 204.)  There are no further notes documenting treatment with Mr. Hall or therapy within this time frame.

Psychologist Sunny S. Bell, M.A. evaluated Claimant at the agency's request on January 2, 2004. (Tr. at 211-15.)  Claimant stated that she had bad nerves and that she was stressed, apathetic and withdrawn.  (Tr. at 211.)  She denied crying episodes, problems with her energy level, or sleep disturbances.  Id.  Ms. Bell noted Claimant's history of abuse and sexual abuse, as well as her transient upbringing, in and out of foster homes and detention centers.  (Tr. at 212.)

Upon mental status examination, Ms. Bell described Claimant as cooperative, motivated, and able to interact in a socially appropriate manner.  (Tr. at 213.)  Claimant spontaneously generated conversation and displayed a sense of humor.  Her thought processes were logical and organized, and her insight appeared adequate.  Her judgment was markedly deficient, as were her recent memory skills.  Her immediate and remote memory skills were within

normal limits, as was her concentration.  Id.

Claimant reported that her daily activities included preparing her children for school, running errands, and taking her children to practices.  She described helping with housework, dishes, and yard work; and stated that she did the cooking and the laundry. (Tr. at 214.)  She indicated that she drove, walked, sat outdoors, visited family and friends, played games with her children, and attended her children's sporting events and school functions.  Id.

Ms. Bell did not make any Axis I diagnoses other than to rule out alcohol and cannabis abuse, sustained full remission.  (Tr. at 214.)  She reported instead that "no significant psychiatric symptomatology was elicited."  While Claimant reported taking medication for "nerves", she denied that the medication was helping.  Id.

Ms. Bell opined that Claimant's prognosis was poor. (Tr. at 214.) She stated that she did not believe Claimant would be capable of managing her benefits should they be awarded due to questionable alcohol abuse, and Claimant's self-report that her husband currently managed the family finances because she had difficulty managing a checkbook.  (Tr. at 215.)

State agency medical source James Binder, M.D. completed a Psychiatric Review Technique form on January 26, 2004.  (Tr. at 226-39.) Dr. Binder opined that Claimant had anxiety-related disorders and substance addiction disorders, but that these

9

impairments were not severe.  (Tr. at 226.)  Claimant was mildly restricted in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. She had no episodes of decompensation of extended duration.  (Tr. at 236.)  Dr. Binder concluded that the evidence did not establish the presence of any "C" criteria of the Listings.  (Tr. at 237.)

Claimant visited psychiatrist Ahmed D. Faheem, M.D., F.A.P.A., M.R.C. Psych. (U.K.) upon self-referral on April 4, 2004.  (Tr. at 336.)  She indicated that she had chronic problems with concentration and ADHD.  She described low energy and irritability, depressed mood, sleep disturbances, poor concentration and memory. Dr. Faheem recorded Claimant's abusive upbringing.  (Tr. at 336.)

Upon mental status examination, Dr. Faheem observed that Claimant was tense and anxious and that her attention and concentration were impaired.  (Tr. at 337.) Her memory, recall, and judgment were intact.  She was not homicidal or suicidal, and had no hallucinations or delusions. Id.

Dr. Faheem diagnosed ADHD and major affective illness (bipolar). At Axis II, he sought to rule out personality disorder. (Tr. at 337.)  At Axis V, he noted that Claimant's highest level of adaptive functioning was 55 on the GAF scale.  He adjusted her medications and instructed her to follow up with him. Id.

Claimant returned to Dr. Faheem some two and one-half months later on July 19, 2004.  (Tr. at 335.)  She reported problems with

her children and her marriage, and stated that she needed to return to therapy.  She stated that her medications were helpful when she took them, and she requested more.  Dr. Faheem noted that Claimant's attention and concentration were impaired.  Her memory, recall, and judgment were intact.  Again, Claimant had no hallucinations or delusions, and was neither suicidal or homicidal.  Id. Dr. Faheem maintained his diagnoses of major affective illness (bipolar) by history, adult ADHD, and anxiety disorder NOS.   Id.

Dr. Faheem prescribed medications, arranged for psychological testing and counseling, and advised Claimant of the importance of keeping her appointments.  Claimant was to return to the office in one month, or sooner if needed.  (Tr. at 335.)

State agency medical source Robert Solomon, Ed.D. completed a Mental Residual Functional Capacity Assessment form on May 22, 2004.  (Tr. at 272-75.)  He opined that Claimant was moderately limited in her abilities to understand, remember, and carry out detailed instructions, as well as her ability to maintain attention and concentration for extended periods.  (Tr. at 272.)  She was moderately limited in her ability to work in coordination with others or in proximity to others without being distracted by them.  Id.  She was moderately limited in her ability to interact appropriately with the general public, as well as her ability to get along with coworkers or peers without distracting them or displaying behavioral extremes.  (Tr. at 273.)  Claimant was not

11

significantly limited in any other area. (Tr. at 272-3.)   Dr.
Solomon commented that Claimant's restrictions were "all due to
ADHD, and affective disorder.  She could perform [illegible] tasks
in work-like setting."  (Tr. at 274.)

On this same date, Dr. Solomon also completed a Psychiatric
Review Technique form, indicating that Claimant suffered ADHD, an
affective disorder, and substance abuse disorders (in remission).
(Tr. at 283, 285, 290.)  He opined that Claimant was mildly limited
in social functioning and moderately limited in maintaining
concentration, persistence, or pace.  (Tr. at 292.) He opined that
the evidence did not establish the presence of any "C" criteria.
(Tr. at 293.)

Claimant returned to Dr. Faheem in September, 2004.  His notes
state that she was doing "okay", but experiencing problems with
depression and concentration.  She was in counseling and stated
that overall, she felt she was coping. (Tr. at 374.) As before, she
remained free of suicidal or homicidal ideations, hallucinations,
or delusions. Id.

On October 7, 2004, Dr. Faheem summarized Claimant's history
and treatment in a letter to Claimant's attorney.  (Tr. at 375.)
He stated that testing in his office revealed that she had
borderline intelligence, that her Beck Depressive Inventory
indicated moderate symptoms of depression, and her Beck Anxiety
Inventory showed moderate symptoms of anxiety. He opined that

12

Claimant was disabled and that based upon her work history, the overall prognosis for employment in the future was poor. (Tr. at 375-76.)

Following the hearing in this matter, Claimant submitted to the Appeals Council a Medical Source Statement of Ability to Do Work-Related Activities (Mental) (hereafter, "Statement") completed by Dr. Faheem on January 3, 2005. (Tr. at 411-12.) Dr. Faheem opined that Claimant had no restriction in understanding, remembering, and carrying out short, simple instructions, but her ability to understand, remember, and carry out detailed instructions was markedly limited. (Tr. at 411.) Claimant's ability to make judgment on simple work-related decisions was also markedly limited. In support of these opinions, Dr. Faheem stated that Claimant had problems with ADHD, major affective illness (bipolar), chronic low back pain, carpal tunnel, and status post tubal ligation. (Tr. at 411.) He opined that Claimant was slightly limited in her ability to interact appropriately with the public; markedly limited in her ability to interact appropriately with supervisors and co-workers; and markedly limited in her ability to respond appropriately to work pressures in a usual work setting. She was extremely limited in her ability to respond appropriately to changes in a routine work setting. (Tr. at 412.)

Dr. Ahmed commented in support of this Statement that testing in his office supported "the possibility of ADHD, which definitely

13

affects her concentration and ability to organize thinking, and do employment.  Beck Inventory showed her to have moderate symptoms of depression and Beck Anxiety Inventory showed her to have moderate symptoms of anxiety." (Tr. at 412.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to give appropriate weight to the opinions of her treating physician, Dr. Faheem; (2) the ALJ failed to adopt the vocational expert's testimony in response to one of two hypothetical questions; and (3) the Appeals Council failed to properly consider Dr. Faheem's Statement submitted post-hearing. (Pl.'s Br. at 11-14.)

A treating physician's opinion is afforded "controlling weight" only if two conditions are met: (1) it is supported by clinical and laboratory diagnostic techniques, and (2) it is not inconsistent with other substantial evidence. <u>Ward v. Chater</u>, 924 F. Supp. 53, 55 (W.D. Va. 1996); <u>see also</u>, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)(2004).  The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)(2004).  Ultimately, it is the responsibility of the Commissioner, not the court, to review the case, make findings of fact, and resolve conflicts of evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2).

Claimant argues that the decision was in error here because the ALJ "can point to no one piece of evidence by an examining physician which supports his conclusions." (Pl.'s Br. at 13.) Claimant misunderstands the inquiry. The regulations and case law do not require an differing opinion from an examining source before a treating physician's opinions are deemed non-controlling. Rather, as set forth above, the inquiry is whether the treating physician's opinions are themselves worthy of controlling weight given the factors of supportability and consistency with other substantial evidence (not limited to medical evidence) of record.

In this case, the ALJ acknowledged each of the regulations above. He also acknowledged that SSR 96-2p states that in order to

afford controlling weight to an opinion of a treating source, the adjudicator must find both that the source's medical opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, *and* that it is not inconsistent with other substantial evidence in the case record. (Tr. at 20, SR 96-2p.)

Pursuant to these regulations, the ALJ concluded that Dr. Faheem's opinions were not entitled to controlling weight because they were inconsistent with the clinical and objective findings of record. While Dr. Faheem opined that Claimant was disabled from gainful employment due to her condition (tr. at 375), the ALJ noted that Claimant had not required any inpatient hospital confinement for her condition since alleging disability in September 2003. (Tr. at 20.) Moreover, despite his opinion that Claimant was so mentally impaired as to be disabled, Dr. Faheem's notes from mental status evaluations consistently documented that Claimant was alert and oriented with no evidence of hallucinations, delusions, or active suicidal/homicidal ideations. (Tr. at 335-7, 374.) Moreover, the ALJ observed, Dr. Faheem rated Claimant's GAF at 55, indicative of no more than moderate symptomatology and/or moderate impairment in social, occupational, or school functioning. (Tr. at 20.) Thus, Dr. Faheem's opinions did not correlate with the clinical and objective findings of record, some of which were contained in his own notes.

Next, the ALJ described the conflict between Dr. Faheem's

opinions and the remainder of the record.  He noted that no other medical source opined that Claimant's condition was totally debilitating.  (Tr. at 20.)  In fact, state agency consultants who evaluated the evidence in May 2004 concluded that Claimant could perform a wide range of work at the light exertional level.  (Tr. at 20, <u>citing</u> tr. at 263-71 (Physical Residual Functional Capacity Assessment); 272-75(Mental Residual Functional Capacity Assessment); and 282-95 (Psychiatric Review Technique).)  The ALJ stated that while these opinions were entitled to less weight because they were given by non-examining physicians, they were still to be considered medical opinions entitled to some weight. (Tr. at 20, <u>citing</u> 20 C.F.R. 404.1512 and 404.1527; 416.912 and 416.927; 36 S.S.R.S. 189; Hallex I-2-115.)

In a preceding section of his opinion, the ALJ noted that Claimant's self-reported activities of daily living indicated only mild restrictions in her activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence or pace.  (Tr. at 17.)  Claimant was able to care for her personal needs, care for her children, watch television, listen to the radio, drive, run errands, and perform household chores such as cooking, vacuuming, dusting, grocery shopping, doing laundry and paying bills.  (Tr. at 17, <u>citing</u> tr. at 99-103 and testimony.)  The ALJ determined that these self-reported activities were consistent with an ability to perform

simple, repetitive, routine job tasks.  (Tr. at 18.)  Next, Dr.
Bell's notes showed that Claimant reported visiting with family and
friends, attended family gatherings, and attended her children's
sporting events and school functions. (Tr. at 17, <u>citing</u> tr. at
211-15.)  The ALJ noted that Claimant had no difficulty interacting
with   others   at   the   hearing,   and   engaged   in   no   socially
inappropriate behavior during the hearing.  She had no record of
any evictions, firings, altercations, or legal difficulties due to
maladaptive social behavior documented in the record. (Tr. at 17.)
Finally, the ALJ noted that Dr. Bell documented concentration,
persistence and pace to be within normal limits. (Tr. at 17, <u>citing</u>
tr. at 213.)

All of this evidence contradicts Dr. Faheem's opinion that
Claimant   was   mentally   incapacitated   from   working.   The   court
proposes that the presiding district judge find that substantial
evidence supports the ALJ's decision that Dr. Faheem's opinions
were not entitled to controlling weight.

Claimant next argues that the ALJ erred in finding that she
did her own housework and child care. Contrary to her assertion,
however, the ALJ did *not* state that she performed "all of the
chores and child rearing activities of the house." (Pl.'s Br. at
14.)  Rather, he commented that *Claimant reported she was able* to
do these things.  (Tr. at 17.)  While Claimant asserts that her
daughters make dinners and do dishes, and that her husband mops,

sweeps and usually runs the vacuum, the court notes that on the same page of the Activities of Daily Living form she cites, Claimant also indicated that she sometimes prepared full meals. (Tr. at 100.)   Claimant qualified this statement only by saying that her girls would make something if she didn't have dinner made. (Tr. at 100.)   Claimant also unqualifiedly indicated that she herself did laundry, vacuumed, dusted furniture, paid bills, cared for her children, and ran errands.   Id.   The court finds that substantial evidence supports the ALJ's assessment of Claimant's daily activities.

Claimant obliquely suggests that the ALJ should have accepted the opinions of the vocational expert in response to a hypothetical question describing an individual who could not stay on task for an eight-hour day. (Pl.'s Br. at 9.)   Given this restriction, the vocational expert found no jobs that such a claimant could perform. However, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.   See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). The record does not support, nor does Claimant advance in either her Motion or Response, facts indicating that she would be unable to stay on task for an eight-hour day.   Rather, as discussed herein, substantial evidence supports that Claimant was capable of a range of light work despite her mental and physical impairments.

19

In her Motion for Judgment on the Pleadings, Claimant makes a two-sentence argument that the Appeals Council failed to properly consider the Medical Source Statement of Ability to Do Work-Related Activities by Dr. Faheem dated January 3, 2005, which was created and submitted post-hearing.  (Pl.'s Br. at 14.)  Claimant expands this argument somewhat in her Response to Defendant's Brief in Support of Judgment on the Pleadings. (Pl.'s Resp. at 1-3.) She contends that this post-hearing evidence should have changed the outcome of her case.

The regulations provide that

> [i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.  It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §§ 404.970(b) and 416.1470(b) (2004).  Consistent therewith, Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991) directs that "[t]he Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'"  Wilkins, 953 F.2d at 95-96 (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)).  Evidence is "new" if

it is "not duplicative or cumulative" and "material" if "there is a reasonable possibility that the new evidence would have changed the outcome." Id. at 96. Pursuant to Wilkins, once the court determines that the evidence is new and material and related to the time period before the ALJ's decision and assuming the evidence has been incorporated into the administrative record (as it always is when the Appeals Council considers it), then the reviewing court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Id.

The preliminary facts of this case are not far from those in Wilkins. In Wilkins, the ALJ issued a decision dated June 1, 1988, which found that Wilkins was ineligible for DIB because her disability insured status ended on December 31, 1986, while she did not become disabled until March 28, 1987. 953 F.2d at 94. Wilkins requested review by the Appeals Council and submitted a post-hearing letter dated June 16, 1988 from her treating physician which attempted to establish disability within the period of her insured status. The court set forth the test above, and found that remand was necessary because her physician's letter addressed an issue that was not specifically addressed by any other evidence (it was "new"), and because it might reasonably have changed the ALJ's conclusion that Wilkins did not become disabled until March 1987 (it was "material"). Id. at 96.

21

In this case, Claimant submitted Dr. Faheem's report just days after the ALJ's decision.  Here, as in <u>Wilkins</u>, the evidence is new in that it is not cumulative or duplicative of other opinions of record.  However, the instant case differs in that the medical statement of Dr. Faheem fails the materiality requirement.  Specifically, unlike the report in <u>Wilkins</u>, problems inherent to Dr. Faheem's opinions make it unlikely that his post-hearing statement would have changed the ALJ's decision.

The Appeals Council herein noted that the opinions expressed in Dr. Faheem's statement are inconsistent with the other clinical and objective findings of record, just as the ALJ had previously noted in his opinion.  (Tr. at 5-6.)  In fact, the Appeals Council stated as follows:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of the Appeals Council.  Your representative submitted a medical source statement from Ahmed Faheem, M.D. which could be interpreted as inconsistent with the Administrative Law Judge's findings regarding your residual functional capacity.  However, these opinions are inconsistent with the other clinical and objective findings of record, as noted by the Administrative Law Judge.  Consequently, we found that this information does not provide a basis for changing the Administrative Law Judge's opinion.

(Tr. at 5-6.)

In other words, the medical source statement was plagued by the *very same flaws* that the ALJ found inherent in Dr. Faheem's

22

other opinions: it lacked the factors of supportability and consistency with the remainder of the record. (Tr. at 17-20.) Insofar as the ALJ declined controlling weight to Dr. Faheem as a treating physician based on these flaws, it is highly unlikely that a separate, subsequent report from Dr. Faheem would have had any impact on his decision to deny benefits. Accordingly, Claimant fails to establish the second prong of the <u>Wilkins</u> analysis.

With respect to the timing of the report, the medical statement itself post-dates the ALJ's decision by a few weeks. Arguably, Claimant fails the third prong of <u>Wilkins</u> as well, since the Appeals Council was not even required to consider this evidence which does not expressly relate "to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b) and 416.1470(b)(2004). However, because the Appeals Council considered the evidence and incorporated it into the administrative record, the court must determine whether substantial evidence supports the Council's finding that the new evidence did not warrant a change in the ALJ's decision. Based on the reasoning above, the court finds such substantial evidence, and proposes that the presiding district judge affirm the decision in this regard.

Claimant requests that the court remand her claim for further proceedings. (Pl.'s Br. at 15; Pl.'s Resp. Br. at 3.) Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new

evidence is material and that good cause exists for the failure to previously offer the evidence.  42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97 (1991).

In order to justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[1]  In Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met:   (1) the evidence is relevant to the determination of disability at the time the application was first

---

[1] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in Borders provides the proper test in this circuit for remand of cases involving new evidence.  This court will apply the standard set forth in Borders in accordance with the reasoning previously expressed in this district:

> The court in Wilkins v. Secretary of Dep't of Health & Human Servs., 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g).  The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that Borders' construction of § 405(g) is incorrect.  Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent Borders inquiry.

Brock v. Secretary, Health and Human Servs., 807 F. Supp. 1248, 1250 n.3 (S.D. W. Va. 1992) (citations omitted).

24

filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence.  Id.

In this case, as stated above, Claimant fails the second requisite: she has failed to demonstrate that the new evidence is material, given the flaws inherent in Dr. Faheem's opinions as noted by the ALJ. Under both the Wilkins and 405(g) analyses, Claimant's request for rehearing or remand falls short.  The court proposes that the presiding District Judge find that the new evidence offered by Claimant is not material, and, as such, Claimant's request for a remand pursuant to sentence six of 42 U.S.C. § 405(g) must be denied.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** judgment in favor of Defendant, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of

25

Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this written opinion and order and to mail a copy of the same to counsel of record.


___June 21, 2006___
Date


Mary E. Stanley
United States Magistrate Judge


26